# UNITED STATES
## CODE
## ANNOTATED

### Title 25

### Indians

(13)

Ch. 8                    RIGHTS-OF-WAY                    25 § 324

Pueblo lands as must also be the bene-
ficiaries and wards. State of N. M. ex
rel. State Highway Commission v. U. S.,
D.C.N.M.1957, 148 F.Supp. 508.

  In proceeding to condemn for highway
purposes lands of Pueblo Indians in New

Mexico, United States must be joined as a
defendant and a Federal district court is
the proper forum to try and determine
the respective rights of the parties. Id.

## § 323.   Rights-of-way for all purposes across any Indian lands

The Secretary of the Interior be, and he is empowered to grant
rights-of-way for all purposes, subject to such conditions as he may
prescribe, over and across any lands now or hereafter held in trust
by the United States for individual Indians or Indian tribes, com-
munities, bands, or nations, or any lands now or hereafter owned,
subject to restrictions against alienation, by individual Indians or
Indian tribes, communities, bands, or nations, including the lands be-
longing to the Pueblo Indians in New Mexico, and any other lands
heretofore or hereafter acquired or set aside for the use and bene-
fit of the Indians. Feb. 5, 1948, c. 45, § 1, 62 Stat. 17.

### Historical Note

**Effective Date.** Section 7 of Act Feb. 5,
1948 provided that sections 323–328 shall
not become operative until 30 days after
Feb. 5, 1948.

**Legislative History:** For legislative
history and purpose of Act Feb. 5, 1948,
see 1948 U.S.Code Cong.Service, p. 1053.

### Notes of Decisions

**Library references**
Indians ⊂⊃10.
United States ⊂⊃40.
C.J.S. Indians §§ 19, 23 et seq.
C.J.S. United States §§ 38–40.

**1.  Manner of acquisition**
  Pueblo Indian lands may be acquired
by condemnation proceedings, by negotia-

tions with the Secretary of the Interior
and by cooperation between the various
heads of the executive department. State
of N. M. ex rel. State Highway Commis-
sion v. U. S., D.C.N.M.1957, 148 F.Supp.
508.

## § 324.   Same; consent of certain tribes; consent of individual Indians

No grant of a right-of-way over and across any lands belonging
to a tribe organized under sections 461–473 and 474–479, of this title;
section 473a of this title and sections 358a and 862 of Title 48;
and sections 501–509 of this title, shall be made without the con-
sent of the proper tribal officials. Rights-of-way over and across
lands of individual Indians may be granted without the consent of
the individual Indian owners if (1) the land is owned by more
than one person, and the owners or owner of a majority of the in-
terests therein consent to the grant; (2) the whereabouts of the
owner of the land or an interest therein are unknown, and the own-
ers or owner of any interests therein whose whereabouts are known,
or a majority thereof, consent to the grant; (3) the heirs or devisees

(14)

of a deceased owner of the land or an interest therein have not been determined, and the Secretary of the Interior finds that the grant will cause no substantial injury to the land or any owner thereof; or (4) the owners of interests in the land are so numerous that the Secretary finds it would be impracticable to obtain their consent, and also finds that the grant will cause no substantial injury to the land or any owner thereof.  Feb. 5, 1948, c. 45, § 2, 62 Stat. 18.

Library references:  Indians ⊂⊃10; C.J.S. Indians §§ 19, 23 et seq.

## § 325.    Same; payment and disposition of compensation

No grant of a right-of-way shall be made without the payment of such compensation as the Secretary of the Interior shall determine to be just.  The compensation received on behalf of the Indian owners shall be disposed of under rules and regulations to be prescribed by the Secretary of the Interior.  Feb. 5, 1948, c. 45, § 3, 62 Stat. 18.

Library references:  Indians ⊂⊃10, 15(1); C.J.S. Indians §§ 19, 23 et seq., 53 et seq.

## § 326.    Same; laws unaffected

Sections 323–328 of this title shall not in any manner amend or repeal the provisions of the Federal Water Power Act of June 10, 1920 (41 Stat. 1063), as amended by the Act of August 26, 1935 (49 Stat. 838), nor shall any existing statutory authority empowering the Secretary of the Interior to grant rights-of-way over Indian lands be repealed.  Feb. 5, 1948, c. 45, § 4, 62 Stat. 18.

Library references:  Indians ⊂⊃10; Navigable Waters ⊂⊃3; C.J.S. Indians §§ 19, 23 et seq.; C.J.S. Navigable Waters § 10 et seq.

### Historical Note

References in Text. The Federal Water Power Act of June 10, 1920 (41 Stat. 1063), as amended by the Act of August 26, 1935 (49 Stat. 838), referred to in the text, was redesignated as the Federal Power Act by section 791a of Title 16, Conservation, and is classified generally to chapter 12 of Title 16.

## § 327.    Same; application for grant by department or agency

Rights-of-way for the use of the United States may be granted under sections 323–328 of this title upon application by the department or agency having jurisdiction over the activity for which the right-of-way is to be used.  Feb. 5, 1948, c. 45, § 5, 62 Stat. 18.

Library references:  Indians ⊂⊃10; C.J.S. Indians §§ 19, 23 et seq.

## § 328.    Same; rules and regulations

The Secretary of the Interior is authorized to prescribe any necessary regulations for the purpose of administering the provisions of sections 323–327 of this title.  Feb. 5, 1948, c. 45, § 6, 62 Stat. 18.

Library references:  United States ⊂⊃41; C.J.S. United States § 41.



§ 169.1

(1) If the Area Director and the Hopi Tribe concur on all or part of the proposed conservation practices in writing in a timely manner, those practices concurred upon may be immediately implemented.

(2) If the Hopi Tribe does not concur on all or part of the proposed conservation practices in a timely manner, the Area Director will submit in writing to the Hopi Tribe a declaration of non-concurrence. The Area Director will then notify the Hopi Tribe in writing of a formal hearing to be held not sooner than 15 days from the date of the non-concurrence declaration.

(i) The formal hearing on non-concurrence will permit the submission of written evidence and argument concerning the proposal. Minutes of the hearing will be taken. Following the hearing, the Area Director may amend, alter or otherwise change his proposed conservation practices. Except as provided in §168.17(d)(1) of this section, if following the hearing, the Area Director altered or amends portions of his proposed plan of action, he will submit those individual altered or amended portions of the plan to the Tribe in a timely manner for their concurrence.

(ii) In the event the Tribe fails or refuses to give its concurrence to the proposal at the hearing, then the implementation of such proposal may only be undertaken in those situations where the Area Director expressly determines in a written order, based upon findings of fact, that the proposed action is necessary to protect the rights and property of life tenants and/or persons awaiting relocation.

§168.18  Appeals.

Appeals from decisions issued under this part will be in accordance with procedures in 25 CFR part 2.

§168.19  Information collection.

The information collection requirement(s) contained in this regulation have been approved by the Office of Management and Budget under 44 U.S.C. 3501 et seq. and assigned clearance number 1076-0027. The information is being collected in order to ascertain eligibility for the issuance of a grazing permit. Response is mandatory in order to obtain a permit.

# PART 169—RIGHTS-OF-WAY OVER INDIAN LANDS

Sec.
169.1   Definitions.
169.2   Purpose and scope of regulations.
169.3   Consent of landowners to grants of right-of-way.
169.4   Permission to survey.
169.5   Application for right-of-way.
169.6   Maps.
169.7   Field notes.
169.8   Public survey.
169.9   Connection with natural objects.
169.10  Township and section lines.
169.11  Affidavit and certificate.
169.12  Consideration for right-of-way grants.
169.13  Other damages.
169.14  Deposit and disbursement of consideration and damages.
169.15  Action on application.
169.16  Affidavit of completion.
169.17  Change of location.
169.18  Tenure of approved right-of-way grants.
169.19  Renewal of right-of-way grants.
169.20  Termination of right-of-way grants.
169.21  Condemnation actions involving individually owned lands.
169.22  Service lines.
169.23  Railroads.
169.24  Railroads in Oklahoma.
169.25  Oil and gas pipelines.
169.26  Telephone and telegraph lines; radio, television, and other communications facilities.
169.27  Power projects.
169.29  Public highways.

AUTHORITY: 5 U.S.C. 301; 52 Stat. 17 (25 U.S.C. 323—328), and other acts cited in the text.

SOURCE: 33 FR 19803, Dec. 27, 1968, unless otherwise noted. Redesignated at 47 FR 13327, Mar. 30, 1982.

§ 169.1  Definitions.

As used in this part 169:

(a) *Secretary* means the Secretary of the Interior or his authorized representative acting under delegated authority. Before proceeding under these regulations anyone desiring a right-of-way should inquire at the Indian Agency, Area Field Office, or other office of the Bureau of Indian Affairs having immediate supervision over the lands involved to determine the identity of the authorized representative of the Secretary for the purposes of this part 169.

(b) *Individually owned land* means land or any interest therein held in

16)

trust by the United States for the benefit of individual Indians and land or any interest therein held by individual Indians subject to Federal restrictions against alienation or encumbrance.

(c) *Tribe* means a tribe, band, nation, community, group or pueblo of Indians.

(d) *Tribal land* means land or any interest therein, title to which is held by the United States in trust for a tribe, or title to which is held by any tribe subject to Federal restrictions against alienation or encumbrance, and includes such land reserved for Indian Bureau administrative purposes. The term also includes lands held by the United States in trust for an Indian corporation chartered under section 17 of the Act of June 18, 1934 (48 Stat. 988; 25 U.S.C. 477).

(e) *Government owned land* means land owned by the United States and under the jurisdiction of the Secretary which was acquired or set aside for the use and benefit of Indians and not included in the definitions set out in paragraphs (b) and (d) of this section.

§ 169.2 Purpose and scope of regulations.

(a) Except as otherwise provided in § 1.2 of this chapter, the regulations in this part 169 prescribe the procedures, terms and conditions under which rights-of-way over and across tribal land, individually owned land and Government owned land may be granted.

(b) Appeals from administrative action taken under the regulations in this part 169 shall be made in accordance with part 2 of this chapter.

(c) The regulations contained in this part 169 do not cover the granting of rights-of-way upon tribal lands within a reservation for the purpose of constructing, operating, or maintaining dams, water conduits, reservoirs, powerhouses, transmission lines or other works which shall constitute a part of any project for which a license is required by the Federal Power Act. The Federal Power Act provides that any license which shall be issued to use tribal lands within a reservation shall be subject to and contain such conditions as the Secretary of the Interior shall deem necessary for the adequate protection and utilization of such lands. (16 U.S.C. 797(e)). In the case of

tribal lands belonging to a tribe organized under the Act of June 18, 1934 (48 Stat. 984), the Federal Power Act requires that annual charges for the use of such tribal lands under any license issued by the Federal Power Commission shall be subject to the approval of the tribe (16 U.S.C. 803(e)).

§ 169.3 Consent of landowners to grants of right-of-way.

(a) No right-of-way shall be granted over and across any tribal land, nor shall any permission to survey be issued with respect to any such lands, without the prior written consent of the tribe.

(b) Except as provided in paragraph (c) of this section, no right-of-way shall be granted over and across any individually owned lands, nor shall any permission to survey be issued with respect to any such lands, without the prior written consent of the owner or owners of such lands and the approval of the Secretary.

(c) The Secretary may issue permission to survey with respect to, and he may grant rights-of-way over and across individually owned lands without the consent of the individual Indian owners when

(1) The individual owner of the land or of an interest therein is a minor or a person non compos mentis, and the Secretary finds that such grant will cause no substantial injury to the land or the owner, which cannot be adequately compensated for by monetary damages;

(2) The land is owned by more than one person, and the owners or owner of a majority of the interests therein consent to the grant;

(3) The whereabouts of the owner of the land or an interest therein are unknown, and the owners or owner of any interests therein whose whereabouts are known, or a majority thereof, consent to the grant;

(4) The heirs or devisees of a deceased owner of the land or an interest therein have not been determined, and the Secretary finds that the grant will cause no substantial injury to the land or any owner thereof;

(5) The owners of interests in the land are so numerous that the Secretary finds it would be impracticable

**Bureau of Indian Affairs, Interior**

§ 169.5

to obtain their consent, and also finds that the grant will cause no substantial injury to the land or any owner thereof.

[36 FR 14183, July 31, 1971. Redesignated at 47 FR 13327, Mar. 30, 1982]

§ 169.4   Permission to survey.

Anyone desiring to obtain permission to survey for a right-of-way across individually owned, tribal or Government owned land must file a written application therefor with the Secretary. The application shall adequately describe the proposed project, including the purpose and general location, and it shall be accompanied by the written consents required by § 169.3, by satisfactory evidence of the good faith and financial responsibility of the applicant, and by a check or money order of sufficient amount to cover twice the estimated damages which may be sustained as a result of the survey. With the approval of the Secretary, a surety bond may be substituted in lieu of a check or money order accompanying an application, provided the company issuing the surety bond is licensed to do business in the State where the land to be surveyed is located. The application shall contain an agreement to indemnify the United States, the owners of the land, and occupants of the land, against liability for loss of life, personal injury and property damage occurring because of survey activities and caused by the applicant, his employees, contractors and their employees, or subcontractors and their employees. When the applicant is an agency or instrumentality of the Federal or a State Government and is prohibited by law from depositing estimated damages in advance or agreeing to indemnification, the requirement for such a deposit and indemnification may be waived providing the applicant agrees in writing to pay damages promptly when they are sustained. An application filed by a corporation must be accompanied by a copy of its charter or articles of incorporation duly certified by the proper State official of the State where the corporation was organized, and a certified copy of the resolution or bylaws of the corporation authorizing the filing of the application. When the land covered by the applica-

tion is located in a State other than that in which the application was incorporated, it must also submit a certificate of the proper State official that the applicant is authorized to do business in the State where the land is located. An application filed by an unincorporated partnership or association must be accompanied by a certified copy of the articles of partnership or association, or if there be none, this fact must be stated over the signature of each member of the partnership or association. If the applicant has previously filed with the Secretary an application accompanied by the evidence required in this section, a reference to the date and place of such filing, accompanied by proof of current financial responsibility and good faith, will be sufficient. Upon receipt of an application made in compliance with the regulations of this part 169, the Secretary may grant the applicant written permission to survey.

§ 169.5   Application for right-of-way.

Written application identifying the specific use requested shall be filed in duplicate with the Secretary. The application shall cite the statute or statutes under which it is filed and the width and length of the desired right-of-way, and shall be accompanied by satisfactory evidence of the good faith and financial responsibility of the applicant. An application filed by a corporation must be accompanied by a copy of its charter or articles of incorporation duly certified by the proper State official of the State where the corporation was organized, and a certified copy of the resolution or bylaws of the corporation authorizing the filing of the application. When the land covered by the application is located in a State other than that in which the applicant was incorporated, it must also submit a certificate of the proper State official that the applicant is authorized to do business in the State where the land is located. An application filed by an unincorporated partnership or association must be accompanied be a certified copy of the articles of partnership or association, or if there be none, this fact must be stated over the signature of each member of the partnership or association. If the

(18)

511

applicant has previously filed with the Secretary an application accompanied by the evidence required by this section, a reference to the date and place of such filing will be sufficient. Except as otherwise provided in this section, the application shall be accompanied by a duly executed stipulation, in duplicate, expressly agreeing to the following:

(a) To construct and maintain the right-of-way in a workmanlike manner.

(b) To pay promptly all damages and compensation, in addition to the deposit made pursuant to § 169.4, determined by the Secretary to be due the landowners and authorized users and occupants of the land on account of the survey, granting, construction and maintenance of the right-of-way.

(c) To indemnify the landowners and authorized users and occupants against any liability for loss of life, personal injury and property damage arising from the construction, maintenance, occupancy or use of the lands by the applicant, his employees, contractors and their employees, or subcontractors and their employees.

(d) To restore the lands as nearly as may be possible to their original condition upon the completion of construction to the extent compatible with the purpose for which the right-of-way was granted.

(e) To clear and keep clear the lands within the right-of-way to the extent compatible with the purpose of the right-of-way; and to dispose of all vegetative and other material cut, uprooted, or otherwise accumulated during the construction and maintenance of the project.

(f) To take soil and resource conservation and protection measures, including weed control, on the land covered by the right-of-way.

(g) To do everything reasonably within its power to prevent and suppress fires on or near the lands to be occupied under the right-of-way.

(h) To build and repair such roads, fences, and trails as may be destroyed or injured by construction work and to build and maintain necessary and suitable crossings for all roads and trails that intersect the works constructed, maintained, or operated under the right-of-way.

(i) That upon revocation or termination of the right-of-way, the applicant shall, so far as is reasonably possible, restore the land to its original condition.

(j) To at all times keep the Secretary informed of its address, and in case of corporations, of the address of its principal place of business and of the names and addresses of its principal officers.

(k) That the applicant will not interfere with the use of the lands by or under the authority of the landowners for any purpose not inconsistent with the primary purpose for which the right-of-way is granted.

When the applicant is the U.S. Government or a State Government or an instrumentality thereof and is prohibited by law from executing any of the above stipulations, the Secretary may waive the requirement that the applicant agree to any stipulations so prohibited.

[33 FR 19803, Dec. 27, 1968, as amended at 45 FR 45910, July 8, 1980. Redesignated at 47 FR 13327, Mar. 30, 1982]

**§ 169.6  Maps.**

(a) Each application for a right-of-way shall be accompanied by maps of definite location consisting of an original on tracing linen or other permanent and reproducible material and two reproductions thereof. The field notes shall accompany the application, as provided in § 169.7. The width of the right-of-way shall be clearly shown on the maps.

(b) A separate map shall be filed for each section of 20 miles of right-of-way, but the map of the last section may include any excess of 10 miles or less.

(c) The scale of maps showing the line of route normally should be 2,000 feet to an inch. The maps may, however, be drawn to a larger scale when necessary and when an increase in scale cannot be avoided through the use of separate field notes, but the scale must not be increased to such extent as to make the maps too cumbersome for convenient handling and filing.

(d) The maps shall show the allotment number of each tract of allotted land, and shall clearly designate each tract of tribal land affected, together with the sections, townships, and

ranges in which the lands crossed by the right-of-way are situated.

### § 169.7 Field notes.

Field notes of the survey shall appear along the line indicating the right-of-way on the maps, unless the maps would be too crowded thereby to be easily legible, in which event the field notes may be filed separately on tracing linen in such form that they may be folded readily for filing. Where field notes are placed on separate tracing linen, it will be necessary to place on the maps only a sufficient number of station numbers so as to make it convenient to follow the field notes. The field notes shall be typewritten. Whether endorsed on the maps or filed separately, the field notes shall be sufficiently complete so as to permit the line indicating the right-of-way to be readily retraced on the ground from the notes. They shall show whether the line was run on true or magnetic bearings, and, in the latter case, the variation of the needle and date of determination must be stated. One or more bearings (or angular connections with public survey lines) must be given. The 10-mile sections must be indicated and numbered on all lines of road submitted.

### § 169.8 Public survey.

(a) The terminal of the line of route shall be fixed by reference of course and distance to the nearest existing corner of the public survey. The maps, as well as the engineer's affidavit and the certificate, shall show these connections.

(b) When either terminal of the line of route is upon unsurveyed land, it must be connected by traverse with an established corner of the public survey if not more than 6 miles distant from it, and the single bearing and distance from the terminal point to the corner computed and noted on the maps, and in the engineer's affidavit, and in the certificate. The notes and all data for the computation of the traverse must be given.

### § 169.9 Connection with natural objects.

When the distance to an established corner of the public survey is more

than 6 miles, this connection will be made with a natural object or a permanent monument which can be readily found and recognized, and which will fix and perpetuate the position of the terminal point. The maps must show the position of such mark, and course and distance to the terminus. There must be given an accurate description of the mark and full data concerning the traverse, and the engineer's affidavit and the certificate on the maps must state the connections.

### § 169.10 Township and section lines.

Whenever the line of survey crosses a township or section line of the public survey, the distance to the nearest existing corner shall be noted. The maps shall show these distances and the station numbers at the points of intersections. The field notes shall show these distances and the station numbers.

### § 169.11 Affidavit and certificate.

(a) There shall be subscribed on the maps of definite location an affidavit executed by the engineer who made the survey and a certificate executed by the applicant, both certifying to the accuracy of the survey and maps and both designating by termini and length in miles and decimals, the line of route for which the right-of-way application is made.

(b) Maps covering roads built by the Bureau of Indian Affairs which are to be transferred to a county or State government shall contain an affidavit as to the accuracy of the survey, executed by the Bureau highway engineer in charge of road construction, and a certificate by the State or county engineer or other authorized State or county officer accepting the right-of-way and stating that he is satisfied as to the accuracy of the survey and maps.

### § 169.12 Consideration for right-of-way grants.

Except when waived in writing by the landowners or their representatives as defined in § 169.3 and approved by the Secretary, the consideration for any right-of-way granted or renewed under this part 169 shall be not less than but not limited to the fair market value of the rights granted, plus severance damages, if any, to the remaining estate.

513



## § 169.13

The Secretary shall obtain and advise the landowners of the appraisal information to assist them (the landowner or landowners) in negotiations for a right-of-way or renewal.

[45 FR 45910, July 8, 1980. Redesignated at 47 FR 13327, Mar. 30, 1982]

## § 169.12 Other damages.

In addition to the consideration for a grant of right-of-way provided for by the provisions of § 169.12, the applicant for a right-of-way will be required to pay all damages incident to the survey of the right-of-way or incident to the construction or maintenance of the facility for which the right-of-way is granted.

## § 169.14 Deposit and disbursement of consideration and damages.

At the time of filing an application for right-of-way, the applicant must deposit with the Secretary the total estimated consideration and damages, which shall include consideration for the right-of-way, severance damages, damages caused during the survey, and estimated damages to result from construction less any deposit previously made under § 169.4. In no case shall the amount deposited as consideration for the right-of-way over any parcel be less than the amount specified in the consent covering that parcel. If in reviewing the application, the Secretary determines that the amounts deposited are inadequate to compensate the owners, the applicant shall increase the deposit to an amount determined by the Secretary to be adequate. The amounts so deposited shall be held in a "special deposit" account for distribution to or for the account of the landowners and authorized users and occupants of the land. Amounts deposited to cover damages resulting from survey and construction may be disbursed after the damages have been sustained. Amounts deposited to cover consideration for the right-of-way and severance damages shall be disbursed upon the granting of the right-of-way. Any part of the deposit which is not required for disbursement as aforesaid shall be refunded to the applicant promptly following receipt of the affidavit of completion of construction filed pursuant to § 169.16.

## § 169.15 Action on application.

Upon satisfactory compliance with the regulations in this part 169, the Secretary is authorized to grant the right-of-way by issuance of a conveyance instrument in the form approved by the Secretary. Such instrument shall incorporate all conditions or restrictions set out in the consents obtained pursuant to § 169.3. A copy of such instrument shall be promptly delivered to the applicant and thereafter the applicant may proceed with the construction work. Maps of definite location may be attached to and incorporated into the conveyance document by reference. In the discretion of the Secretary, one conveyance document may be issued covering all of the tracts of land traversed by the right-of-way, or separate conveyances may be made covering one or several tracts included in the application. A duplicate original copy of the conveyance instrument, permanent and reproducible maps, a copy of the application and stipulations, together with any other pertinent documents shall be transmitted by the Secretary to the office of record for land documents affecting the land covered by the right-of-way, where they will be recorded and filed.

## § 169.16 Affidavit of completion.

Upon the completion of the construction of any right-of-way, the applicant shall promptly file with the Secretary an affidavit of completion, in duplicate, executed by the engineer and certified by the applicant. The Secretary shall transmit one copy of the affidavit to the office of record mentioned in § 169.15. Failure to file an affidavit in accordance with this section shall subject the right-of-way to cancellation in accordance with § 169.20.

## § 169.17 Change of location.

If any change from the location described in the conveyance instrument is found to be necessary on account of engineering difficulties or otherwise, amended maps and field notes of the new location shall be filed, and a right-of-way for such new route or location shall be subject to consent, approval, the ascertainment of damages, and the payment thereof, in all respects as in

514



**Bureau of Indian Affairs, Interior**

the case of the original location. Before a revised conveyance instrument is issued, the applicant shall execute such instruments deemed necessary by the Secretary extinguishing the right-of-way at the original location. Such instruments shall be transmitted by the Secretary to the office of record mentioned in § 169.15 for recording and filing.

**§ 169.18  Tenure of approved right-of-way grants.**

All rights-of-way granted under the regulations in this part 169 shall be in the nature of easements for the periods stated in the conveyance instrument. Except as otherwise determined by the Secretary and stated in the conveyance instrument, rights-of-way granted under the Act of February 5, 1948 (62 Stat. 17; 25 U.S.C. 323-328), for railroads, telephone lines, telegraph lines, public roads and highways, access roads to homesite properties, public sanitary and storm sewer lines including sewage disposal and treatment plants, water control and use projects (including but not limited to dams, reservoirs, flowage easements, ditches, and canals), oil, gas, and public utility water pipelines (including pumping stations and appurtenant facilities), electric power projects, generating plants, switchyards, electric transmission and distribution lines (including poles, towers, and appurtenant facilities), and for service roads and trails essential to any of the aforestated use purposes, may be without limitation as to term of years; whereas, rights-of-way for all other purposes shall be for a period of not to exceed 50 years, as determined by the Secretary and stated in the conveyance instrument.

[37 FR 12937, June 30, 1972. Redesignated at 47 FR 13327, Mar. 30, 1982]

**§ 169.19  Renewal  of  right-of-way grants.**

On or before the expiration date of any right-of-way heretofore or hereafter granted for a limited term of years, an application may be submitted for a renewal of the grant. If the renewal involves no change in the location or status of the original right-of-way grant, the applicant may file with his application a certificate under oath

setting out this fact, and the Secretary, with the consent required by § 169.3, may thereupon extend the grant for a like term of years, upon the payment of consideration as set forth in § 169.12. If any change in the size, type, or location of the right-of-way is involved, the application for renewal shall be treated and handled as in the case of an original application for a right-of-way.

**§ 169.20  Termination of right-of-way grants.**

All rights-of-way granted under the regulations in this part may be terminated in whole or in part upon 30 days written notice from the Secretary mailed to the grantee at its latest address furnished in accordance with § 169.5(i) for any of the following causes:

(a) Failure to comply with any term or condition of the grant or the applicable regulations;

(b) A nonuse of the right-of-way for a consecutive 2-year period for the purpose for which it was granted;

(c) An abandonment of the right-of-way.

If within the 30-day notice period the grantee fails to correct the basis for termination, the Secretary shall issue an appropriate instrument terminating the right-of-way. Such instrument shall be transmitted by the Secretary to the office of record mentioned in § 169.15 for recording and filing.

[35 FR 19803, Dec. 27, 1966, as amended at 45 FR 45910, July 8, 1980. Redesignated at 47 FR 13327, Mar. 30, 1982]

**§ 169.21  Condemnation actions involving individually owned lands.**

The facts relating to any condemnation action to obtain a right-of-way over individually owned lands shall be reported immediately by officials of the Bureau of Indian Affairs having knowledge of such facts to appropriate officials of the Interior Department so that action may be taken to safeguard the interests of the Indians.

**§ 169.22  Service lines.**

(a) An agreement shall be executed by and between the landowner or a legally authorized occupant or user of individually owned land and the applicant before any work by the applicant



515

may be undertaken to construct a service line across such land. Such a service line shall be limited in the case of power lines to a voltage of 14.5 kv. or less except lines to serve irrigation pumps and commercial and industrial uses which shall be limited to a voltage not to exceed 34.5 kv. A service line shall be for the sole purpose of supplying the individual owner or authorized occupant or user of land, including schools and churches, with telephone, water, electric power, gas, and other utilities for use by such owner, occupant, or user of the land on the premises.

(b) A similar agreement to that required in paragraph (a) of this section shall be executed by the tribe and the legally authorized occupant or user of tribal land and the applicant before any work by the applicant may be undertaken for the construction of a service line across tribal land. A service line shall be for the sole purpose of supplying an occupant or user of tribal land with any of the utilities specified in paragraph (a) of this section. No agreement under this paragraph shall be valid unless its execution shall have been duly authorized in advance of construction by the governing body of the Indian tribe whose land is affected, unless the contract under which the occupant or user of the land obtained his rights specifically authorizes such occupant or user to enter into service agreements for utilities without further tribal consent.

(c) In order to encourage the use of telephone, water, electric power, gas and other utilities and to facilitate the extension of these modern conveniences to sparsely settled Indian areas without undue costs the agreement referred to in paragraph (a) of this section shall only be required to include or have appended thereto, a plat or diagram showing with particularity the location, size, and extent of the line. When the plat or diagram is placed on a separate sheet it shall bear the signature of the parties. In case of tribal land, the agreement shall be accompanied by a certified copy of the tribal authorization when required.

(d) An executed copy of the agreement, together with a plat or diagram, and in the case of tribal land, an au-

thenticated copy of the tribal authorization, when required, shall be filed with the Secretary within 30 days after the date of its execution. Failure to meet this requirement may result in the removal of improvements placed on the land at the expense of the party responsible for the placing of such improvements and subject such party to the payment of damages caused by his unauthorized act.

§ 169.23  Railroads.

(a) The Act of March 2, 1899 (30 Stat. 990), as amended by the Acts of February 28, 1902 (32 Stat. 50), June 21, 1906 (34 Stat. 330), and June 25, 1910 (36 Stat. 859; 25 U.S.C. 312—318); the Act of March 3, 1875 (18 Stat. 482; 43 U.S.C. 934); and the Act of March 3, 1909 (35 Stat. 781), as amended by the Act of May 6, 1910 (36 Stat. 349; 25 U.S.C. 320), authorize grants of rights-of-way across tribal, individually owned and Government-owned land, except in the State of Oklahoma, for railroads, station buildings, depots, machine shops, side tracks, turnouts, and water stations; for reservoirs, material or ballast pits needed to the construction, repair, and maintenance of railroads; and for the planting and growing of trees to protect railroad lines. Rights-of-way granted under the above acts shall be subject to the provisions of this section as well as other pertinent sections of this part 169. Except when otherwise determined by the Secretary, rights-of-way for the above purposes granted under the Act of February 5, 1948 (62 Stat. 17; 25 U.S.C. 323-328), shall also be subject to the provisions of this section.

(b) Rights-of-way for railroads shall not exceed 50 feet in width on each side of the centerline of the road, except where there are heavy cuts and fills, when they shall not exceed 100 feet in width on each side of the road. The right-of-way may include grounds adjacent to the line for station buildings, depots, machine shops, side tracks, turnouts, and water stations, not to exceed 200 feet in width by a length of 3,000 feet, with no more than one station to be located within any one continuous length of 10 miles of road.

(c) Short spurs and branch lines may be shown on the map of the main line.

(23)

**Bureau of Indian Affairs, Interior**                         **§ 169.25**

separately described by termini and
length. Longer spurs and branch lines
shall be shown on separate maps.
Grounds desired for station purposes
may be indicated on the map of defi-
nite location but separate plats must
be filed for such grounds. The maps
shall show any other line crossed, or
with which connection is made. The
station number shall be shown on the
survey thereof at the point of intersec-
tion. All intersecting roads must be
represented in ink of a different color
from that used for the line for which
application is made.

(d) Plats of railroad station grounds
shall be drawn on a scale of 400 feet to
an inch, and must be filed separately
from the line of route. Such plats shall
show enough of the line of route to in-
dicate the position of the tract with
reference thereto. Each station ground
tract must be located with respect to
the public survey as provided in § 169.8
and all buildings or other structures
shall be platted on a scale sufficiently
large to show clearly their dimensions
and relative positions.

(e) If any proposed railroad is par-
allel to, and within 10 miles of, a rail-
road already built or in course of con-
struction. it must be shown wherein
the public interest will be promoted by
the proposed road. Where the Inter-
state Commerce Commission has
passed on this point, a certified copy of
its findings must be filed with the ap-
plication.

(f) The applicant must certify that
the road is to be operated as a common
carrier of passengers and freight.

(g) The applicant shall execute and
file, in duplicate, a stipulation obli-
gating the company to use all pre-
cautions possible to prevent forest fires
and to suppress such fires when they
occur, to construct and maintain pas-
senger and freight stations for each
Government townsite, and to permit
the crossing, in a manner satisfactory
to the Government officials in charge,
of the right-of-way by canals, ditches,
and other projects.

(h) A railroad company may apply for
sufficient land for ballast or material
pits, reservoirs, or tree planting to aid
in the construction or maintenance of
the road. The authority to use any land
for such purposes shall terminate upon

abandonment or upon failure to use the
land for such purposes for a continuous
period of 2 years.

**§ 169.24  Railroads in Oklahoma.**

(a) The Act of February 28, 1902 (32
Stat. 43). authorizes right-of-way
grants across tribal and individually
owned land in Oklahoma. Rights-of-
way granted under that act shall be
subject to the provisions of this section
as well as other pertinent sections of
this part 169. Except when otherwise
determined by the Secretary, railroad
rights-of-way in Oklahoma granted
under the Act of February 5, 1948 (62
Stat. 17; 25 U.S.C. 323-328), shall also be
subject to the provisions of this sec-
tion.

(b) One copy on tracing linen of the
map of definite location showing the
line of route and all lands included
within the right-of-way must be filed
with the Secretary. When tribal lands
are involved, a copy of the map must
also be filed with the tribal council.

(c) Before any railroad may be con-
structed or any lands taken or con-
demned for any of the purposes set
forth in section 13 of the Act of Feb-
ruary 28, 1902 (32 Stat. 47), full damages
shall be paid to the Indian owners.

(d) After the maps have been filed,
the matter of damages shall be nego-
tiated by the applicant directly with
the Indian owners. If an amicable set-
tlement cannot be reached, the amount
to be paid as compensation and dam-
ages shall be fixed and determined as
provided in the statute. If court pro-
ceedings are instituted, the facts shall
be reported immediately as provided in
§ 169.21.

**§ 169.25  Oil and gas pipelines.**

(a) The Act of March 11, 1904 (33 Stat.
65), as amended by the Act of March 2,
1917 (39 Stat. 973; 25 U.S.C. 321), author-
izes right-of-way grants for oil and gas
pipelines across tribal. individually
owned and Government-owned land.
Rights-of-way granted under that act
shall be subject to the provisions of
this section as well as other pertinent
sections of this part 169. Except when
otherwise determined by the Secretary,
rights-of-way granted for such purposes
under the Act of February 5, 1948 (62
Stat. 17; 25 U.S.C. 323-328) shall also be

517



subject to the provisions of this section.

(b) Rights-of-way, granted under aforesaid Act of March 11, 1904, as amended, for oil and gas pipelines, pumping stations or tank sites shall not extend beyond a term of 20 years and may be extended for another period of not to exceed 20 years following the procedures set out in § 169.19 of this part.

(c) All oil or gas pipelines, including connecting lines, shall be buried at a sufficient depth below the surface of the land so as not to interfere with cultivation. Whenever the line is laid under a road or highway, the right-of-way for which has been granted under an approved application pursuant to an act of Congress, its construction shall be in compliance with the applicable Federal and State laws; during the period of construction, at least one-half the width of the road shall be kept open to travel; and, upon completion, the road or highway shall be restored to its original condition and all excavations shall be refilled. Whenever the line crosses a ravine, canyon, or waterway, it shall be laid below the bed thereof or upon such superstructure as will not interfere with the use of the surface.

(d) The size of the proposed pipeline must be shown in the application, on the maps, and in the engineer's affidavit and applicant's certificate. The application and maps shall specify whether the pipe is welded, screw-joint, dresser, or other type of coupling. Should the grantee of an approved right-of-way desire at any time to lay additional line or lines of pipe in the same trench, or to replace the original line with larger or smaller pipe, written permission must first be obtained from the Secretary and all damages to be sustained by the owners must be paid in advance in the amount fixed and determined by the Secretary.

(e) Applicants for oil or gas pipeline rights-of-way may apply for additional land for pumping stations or tank sites. The maps shall show clearly the location of all structures and the location of all lines connecting with the main line. Applicants for lands for pumping stations or tank sites shall execute and file a stipulation agreeing as follows:

(1) Upon abandonment of the right-of-way to level all dikes, fire-guards, and excavations and to remove all concrete masonry foundations, bases, and structural works and to restore the land as nearly as may be possible to its original condition.

(2) That a grant for pumping station or tank site purposes shall be subservient to the owner's right to remove or authorize the removal of oil, gas, or other mineral deposits; and that the structures for pumping station or tank site will be removed or relocated if necessary to avoid interference with the exploration for or recovery of oil, gas, or other minerals.

(f) Purely lateral lines connecting with oil or gas wells on restricted lands may be constructed upon filing with the Secretary a copy of the written consent of the Indian owners and a blueprint copy of a map showing the location of the lateral. Such lateral lines may be of any diameter or length, but must be limited to those used solely for the transportation of oil or gas from a single tract of tribal or individually owned land to another lateral or to a branch of the main line.

(g) The applicant, by accepting a pipeline right-of-way, thereby agrees that the books and records of the applicant shall be open to inspection by the Secretary at all reasonable times, in order to obtain information pertaining in any way to oil or gas produced from tribal or individually owned lands or other lands under the jurisdiction of the Secretary.

§ 169.26  Telephone and telegraph lines; radio, television, and other communications facilities.

(a) The Act of February 15, 1901 (31 Stat. 790), as amended by the Act of March 4, 1940 (54 Stat. 41; 43 U.S.C. 959); the Act of March 4, 1911 (36 Stat. 1253), as amended by the Act of May 27, 1952 (66 Stat. 95; 43 U.S.C. 961); and the Act of March 3, 1901 (31 Stat. 1083; 25 U.S.C. 319), authorize right-of-way grants across tribal, individually owned, and Government-owned land for telephone and telegraph lines and offices, for poles and lines for communication purposes, and for radio, television, and



other forms of communication transmitting, relay, and receiving structures and facilities, Rights-of-way granted under these acts shall be subject to the provisions of this section as well as other pertinent sections of this part 169. Except when otherwise determined by the Secretary, rights-of-way granted for such purposes under the Act of February 5, 1948 (62 Stat. 17; 25 U.S.C. 323—328); shall also be subject to the provisions of this section.

(b) A right-of-way granted under the said Act of March 4, 1911, as amended, shall be limited to a term not exceeding 50 years from the date of the issuance of such grant.

(c) No right-of-way shall be granted for a width in excess of 50 feet on each side of the centerline, unless special requirements are clearly set forth in the application which fully justify a width in excess of 50 feet on each side of the centerline.

(d) Applicants engaged in the general telephone and telegraph business may apply for additional land for office sites. The maps showing the location of proposed office sites shall be filed separately from those showing the line of route, and shall be drawn to a scale of 50 feet to an inch. Such maps shall show enough of the line of route to indicate the position of the tract with reference thereto. The tract shall be located with respect to the public survey as provided in §169.8, and all buildings or other structures shall be platted on a scale sufficiently large to show clearly their dimensions and relative positions.

(e) Rights-of-way for poles and lines for communication purposes, and for radio, television, and other forms of communication transmitting, relay, and receiving structures and facilities, shall be limited to 200 feet on each side of the centerline of such lines and poles; radio and television, and other forms of communication transmitting, relay, and receiving structures and facilities shall be limited to an area not to exceed 400 feet by 400 feet.

§169.27 Power projects.

(a) The Act of March 4, 1911 (36 Stat. 1253), as amended by the Act of May 27, 1952 (66 Stat. 95; 43 U.S.C. 961), authorizes right-of-way grants across tribal,

individually owned and Government-owned land for electrical poles and lines for the transmission and distribution of electrical power. Rights-of-way granted under that act shall be subject to the provisions of this section as well as other pertinent sections of this part 169. Except when otherwise determined by the Secretary, rights-of-way granted for such purposes under the Act of February 5, 1948 (62 Stat. 17; 25 U.S.C. 323—328) shall also be subject to the provisions of this section.

(b) All applications, other than those made by power-marketing agencies of the Department of the Interior, for authority to survey, locate, or commence construction work on any project for the generation of electric power, or the transmission or distribution of electrical power of 66 kV or higher involving Government-owned lands shall be referred to the Office of the Assistant Secretary of the Interior for Water and Power Resources or such other agency as may be designated for the area involved, for consideration of the relationship of the proposed project to the power development program of the United States. Where the proposed project will not conflict with the program of the United States, the Secretary, upon notification to the effect, may then proceed to act upon the application. In the case of necessary changes respecting the proposed location, construction, or utilization of the project in order to eliminate conflicts with the power development program of the United States, the Secretary shall obtain from the applicant written consent to or compliance with such requirements before taking further action on the application.

(c) A right-of-way granted under the said Act of March 4, 1911, as amended, shall be limited to a term not exceeding 50 years from the date of the issuance of such grant.

(d) Rights-of-way for power lines shall be limited to those widths which can be justified and in no event shall exceed a width of 200 feet on each side of the centerline.

(e) The applicant shall make provision, or bear the reasonable cost (as may be determined by the Secretary)

519

(26)

of making provision, for avoiding inductive interference between any project transmission line or other project works constructed, operated, or maintained by it on the right-of-way authorized under the grant and any radio installation, telephone line, or other communication facilities now or hereafter constructed and operated by the United States or any agency thereof. This provision shall not relieve the applicant from any responsibility or requirement which may be imposed by other lawful authority for avoiding or eliminating inductive interference.

(f) An applicant for a right-of-way for a transmission line across Government-owned lands having a voltage of 66 kV or more must, in addition to the stipulation required by § 169.5, execute and file with its application a stipulation agreeing to accept the right-of-way grant subject to the following conditions:

(1) The applicant agrees that, in the event it becomes necessary for the United States to acquire the applicant's transmission line or facilities constructed on or across such right-of-way, the United States reserves the right to acquire such line or facilities at a sum to be determined upon by a representative of the applicant, a representative of the Secretary of the Interior, and a third representative to be selected by the other two for the purpose of determining the value of such property thus to be acquired by the United States.

(2) To allow the Department of the Interior to utilize for the transmission of electrical power any surplus capacity of the line in excess of the capacity needed by the holder of the grant for the transmission of electrical power in connection with the applicant's operations, or to increase the capacity of the line at the Department's expense and to utilize the increased capacity for the transmission of electrical power. Utilization by the Department of surplus or increased capacity shall be subject to the following terms and conditions:

(i) When the Department desires to utilize surplus capacity thought to exist in a line, notification will be given to the applicant and the applicant shall furnish to the Department within 30 days a certificate stating whether the line has any surplus capacity not needed by the applicant for the transmission of electrical power in connection with the applicant's operations, and, if so, the extent of such surplus capacity.

(ii) In order to utilize any surplus capacity certified by the applicant to be available, or any increased capacity provided by the Department at its own expense, the Department may interconnect its transmission facilities with the applicant's line in a manner conformable to approved standards of practice for the interconnection of transmission circuits.

(iii) The expense of interconnection will be borne by the Department, and the Department will at all times provide and maintain adequate switching, relaying, and protective equipment so as to insure that the normal and efficient operation of the applicant's line will not be impaired.

(iv) After any interconnection is completed, the applicant shall operate and maintain its line in good condition; and, except in emergencies, shall maintain in a closed position all connections under the applicant's control between the applicant's line and the interconnecting facilities provided by the Department.

(v) The interconnected power systems of the Department and the applicant will be operated in parallel.

(vi) The transmission of electrical power by the Department over the applicant's line will be effected in such manner and quantity as will not interfere unreasonably with the applicant's use and operation of the line in accordance with the applicant's normal operating standards, except that the Department shall have the exclusive right to utilize any increased capacity of the line which has been provided at the Department's expense.

(vii) The applicant will not be obligated to allow the transmission over its line by the Department of electrical power to any person receiving service from the applicant on the date of the filing of the application for a grant, other than persons entitled to statutory preference in connection with the distribution and sale of electrical power by the Department.



(viii) The Department will pay to the applicant an equitable share of the total monthly cost of maintaining and operating the part of the applicant's line utilized by the Department for the transmission of electrical power, the payment to be an amount in dollars representing the same proportion of the total monthly operation and maintenance cost of such part of the line as the maximum amount in kilowatts of the power transmitted on a scheduled basis by the Department over the applicant's line during the month bears to the total capacity in kilowatts of that part of the line. The total monthly cost may include interest and amortization, in accordance with the system of accounts prescribed by the Federal Power Commission, on the applicant's net total investment (exclusive of any investment by the Department) in the part of the line utilized by the Department.

(ix) If, at any time subsequent to a certification by the applicant that surplus capacity is available for utilization by the Department, the applicant needs for the transmission of electrical power in connection with its operations the whole or any part of the capacity of the line theretofore certified as being surplus to its needs, the applicant may modify or revoke the previous certification by giving the Secretary of the Interior 30 months' notice, in advance, of the applicant's intention in this respect. After the revocation of a certificate, the Department's utilization of the particular line will be limited to the increased capacity, if any, provided by the Department at its expense.

(x) If, during the existence of the grant, the applicant desires reciprocal accommodations for the transmission of electrical power over the interconnecting system of the Department to its line, such reciprocal accommodations will be accorded under terms and conditions similar to those prescribed in this paragraph with respect to the transmission by the Department of electrical power over the applicant's line.

(xi) The terms and conditions prescribed in this paragraph may be modified at any time by means of a supplemental agreement negotiated between the applicant and the Secretary of the Interior or his designee.

(b) Applicants may apply for additional lands for generating plants and appurtenant facilities. The lands desired for such purposes may be indicated on the maps showing the definite location of the right-of-way, but separate maps must be filed therefor. Such maps shall show enough of the line of route to indicate the position of the tract with respect to said line. The tract shall be located with respect to the public survey as provided in §169.5, and all buildings or other structures shall be platted on a scale sufficiently large to show clearly their dimensions and relative positions.

[33 FR 19803, Dec. 27, 1968, as amended at 38 FR 14580, June 4, 1973. Redesignated at 47 FR 13327, Mar. 30, 1982]

§169.28 Public highways.

(a) The appropriate State or local authorities may apply under the regulations in this part 169 for authority to open public highways across tribal and individually owned lands in accordance with State laws, as authorized by the Act of March 3, 1901 (31 Stat. 1084; 25 U.S.C. 311).

(b) In lieu of making application under the regulations in this part 169, the appropriate State or local authorities in Nebraska or Montana may, upon compliance with the requirements of the Act of March 4, 1915 (38 Stat. 1188), lay out and open public highways in accordance with the respective laws of those States. Under the provisions of that act, the applicant must serve the Secretary with notice of intention to open the proposed road and must submit a map of definite location on tracing linen showing the width of the proposed road for the approval of the Secretary prior to the laying out and opening of the road.

(c) Applications for public highway rights-of-way over and across roadless and wild areas shall be considered in accordance with the regulations contained in part 265 of this chapter.



# PART 170—ROADS OF THE BUREAU OF INDIAN AFFAIRS

CONSTRUCTION AND MAINTENANCE OF ROADS

Sec.
170.1   Purpose.
170.2   Definitions.
170.3   Construction and improvement.
170.4   Approval of road construction activities.
170.4a  Selection of road construction projects.
170.4b  What formula will BIA use to distribute $25 million of fiscal year 2002 Indian Reservation Roads Program funds?
170.5   Right-of-way.
170.5a  Employment of Indians.
170.6   Maintenance of Indian roads.
170.6a  Contributions from tribes.
170.7   Cooperation with States.
170.8   Use of roads.
170.9   Roadless and wild areas.

PUBLIC HEARINGS ON ROAD PROJECTS

170.10  Purpose and objectives.
170.11  Criteria.
170.12  Need for public hearing determined.
170.13  Notice of road construction projects.
170.14  Notice of public hearing.
170.15  Record of hearing proceedings.
170.16  Conducting the public hearing.
170.17  Written statements.
170.18  Hearing statement.
170.19  Appeals.

AUTHORITY: 36 Stat. 861; 78 Stat. 241, 253, 257; 45 Stat. 750 (25 U.S.C. 47; 42 U.S.C. 2000a(b), 2000e–2(i); 23 U.S.C. 101(a), 204, 305), unless otherwise noted.

SOURCE: Sections 170.1 to 170.9, 39 FR 27132, July 25, 1974, unless otherwise noted. Redesignated at 47 FR 13327, Mar. 30, 1982.

CONSTRUCTION AND MAINTENANCE OF ROADS

§ 170.1 Purpose.

The regulations in this part, govern the planning, design, construction, maintenance and general administration of certain Indian reservation roads and bridges.

§ 170.2 Definitions.

As used in this part:

(a) *Commissioner* means the Commissioner of Indian Affairs.

(b) *Superintendent* means the Agency Superintendent at all locations, with the exception that at the Navajo Reservation this term shall mean the Area Director or his designated representative for public hearings on arterial roads which cross Agency boundaries of jurisdiction.

(c) *State* means a State or territory or political subdivision thereof.

(d) *Indian Reservation Roads and Bridges* means roads and bridges that are located within or provide access to an Indian reservation or Indian trust land or restricted Indian land which is not subject to fee title alienation without the approval of the Federal Government, or Indian and Alaska Native villages, groups or communities in which Indians and Alaskan Natives reside, whom the Commissioner has determined are eligible for services generally available to Indians under Federal laws specifically applicable to Indians. (23 U.S.C. 101(a))

(e) *Indian and Alaskan Native villages, groups, or communities in which Indian or Alaska Natives reside* means villages, groups or communities or portions of villages, groups, or communities in which the majority of the residents are Indians or Alaska Natives.

(f) *Federal-Aid Indian Road System* means those Indian reservation roads and bridges for which financial aid for construction is available only from specific appropriations of Federal funds therefor and which are designated by the Bureau of Indian Affairs and the Federal Highway Administration. This term does not include roads or bridges on Indian reservations for which financial aid for construction and improvement is available to a State under the Federal-Aid Highway Act. (46 Stat. 750)

(g) *Construction* means supervising, inspecting, actual building, and all expenses incidental to the construction and improvement of roads and bridges including the elimination of roadway hazards and the acquisition of rights-of-way.

(h) *Maintenance* means the act of preserving the entire roadway, including surface, shoulders, roadsides, structures, and the necessary traffic control devices as nearly as possible in the as-built condition and to provide services for the satisfactory and safe use of such roads.

§ 170.3 Construction and improvement.

Subject to the availability of appropriations for Indian reservation roads and bridges and any other contribution

29

of State or Indian tribal lands, the Commissioner shall plan, survey, design and construct roads on the Federal-Aid Indian Road System to provide an adequate system of road facilities serving Indian lands.

### § 170.4 Approval of road construction activities.

The Secretary of Transportation or his authorized representative shall approve the location, type, and design of all projects on the Federal-Aid Indian Road System before any construction expenditures are made. All such construction shall be under the general supervision of the Secretary of Transportation or his authorized representative.

(23 U.S.C. 208)

### § 170.4a Selection of road construction projects.

The Commissioner, who is responsible for the planning, surveys and design, shall keep the appropriate local tribal officials informed of all technical information relating to the project alternatives of proposed road developments. The Commissioner shall recommend to the tribe those proposed road projects having the greatest need as determined by the comprehensive transportation analysis. Tribes shall then establish annual priorities for road construction projects. Subject to the approval of the Commissioner, the annual selection of road projects for construction shall be performed by tribes. Funds available for the construction of roads on the Federal-Aid Indian Road System shall not be used for the capital improvement to privately-owned property. (39 Stat. 355)

### § 170.4b What formula will BIA use to distribute $25 million of fiscal year 2003 Indian Reservation Roads Program funds?

On January 13, 2003 we will distribute $25 million of fiscal year 2003 IRR Program funds authorized under Section 1115 of the Transportation Equity Act for the 21st Century, Public Law 105–178, 112 Stat. 154. We will distribute the funds to Indian Reservation Roads projects on or near Indian reservations using the relative need formula established and approved in January 1993. The formula has been modified to account for non-reporting States by inserting the latest data reported for those states for use in the relative need formula process.

[68 FR 1005, Jan. 8, 2003]

EFFECTIVE DATE NOTE: At 68 FR 1005, Jan. 8, 2003, §170.4b was added, effective Jan. 13, 2003 through Sept. 30, 2003.

### § 170.5 Right-of-way.

(a) The procedure for obtaining permission to survey and for granting any necessary right-of-way are governed by part 169 of this chapter. Tribal consent as required under §169.3(a) may be made by public dedication where proper tribal authority exists. Before any work is undertaken for the construction of road projects, the Commissioner shall obtain the written consent of the Indian landowners. Where an Indian has an interest in tribal land by virtue of a land use assignment, such consent shall be obtained from both the landholder of the assignment and the Indian tribe. Right-of-way easements are to be on a form approved by the Commissioner.

(b) If it appears that the road might be transferred to the tribe, the county or the State within 10 years, then before such construction is undertaken, right-of-way easements for the project shall be obtained in favor of the United States, its successors and assigns, with the right to construct, maintain, and repair improvements thereon and thereover, for such purposes and with the further right in the United States, its successors and assigns, to transfer the right-of-way easements by assignment, grant or otherwise.

### § 170.5a Employment of Indians.

The Bureau of Indian Affairs road program shall be administered in such a way as to provide training and employment of Indians. The Commissioner may contract with tribes and Indian-owned construction companies, or the Commissioner may purchase materials, obtain equipment and employ Indian labor in the construction and maintenance of roads.

(36 Stat. 861; 78 Stat. 241, 253; 78 Stat. 257; 25 U.S.C. 47; 42 U.S.C. 2000e(b), 2000e-2(i); 23 U.S.C. 208(c))

30

§ 170.6                                          25 CFR Ch. I (4–1–03 Edition)

§ 170.5  Maintenance of Indian roads.

The administration and maintenance of Indian reservation roads and bridges is basically a function of the local Government. Subject to the availability of funds, the Commissioner shall maintain, or cause to be maintained, those approved roads on the Federal-Aid Indian Road System. The Commissioner may also maintain roads not on the Federal-Aid Indian Road System if such roads meet the definition of "Indian reservation road and bridges" and are approved for maintenance by the Commissioner. No funds authorized under 23 U.S.C. 208 are available for the maintenance of roads.

§ 170.6a  Contributions from tribes.

The Commissioner may enter into agreements with an Indian tribe for a contribution from its tribal funds for the construction or maintenance of roads governed by regulations of this part. However, the tribe must be able to make such contributions without undue impairment of the necessary tribal functions.

§ 170.7  Cooperation with States.

The Commissioner may enter into an agreement with the State for cooperation in the construction and the maintenance of certain Indian reservation roads and bridges, especially at those locations where road projects serve non-Indian land as well as Indian land.

(23 U.S.C. 208(d); 23 U.S.C.308(a))

§ 170.8  Use of roads.

(a) Free public use is required on roads eligible for construction and maintenance with Federal funds under this part. When required for public safety, fire prevention or suppression, or fish or game protection, or to prevent damage to unstable roadbed, the Commissioner may restrict the use of them or may close them to public use.

(b) The Commissioner shall conduct engineering and traffic analysis in accordance with established traffic engineering practices and determine the necessary maximum speed limit, maximum vehicular weight limit and other needed regulatory signs for roads which he maintains. The Commissioner shall make recommendations to local

Government officials, who are authorized to enact and enforce ordinances on Indian lands, of his determination of the needed regulatory signs. Such regulatory signs as are authorized by established ordinances shall be erected by the Commissioner. At locations under the jurisdiction of the Court of Indian Offenses, the Commissioner shall erect such regulatory signs as he determines are needed.

§ 170.9  Roadless and wild areas.

Roads passable to motor transportation shall not be constructed under the regulations in this part within the boundaries of the roadless and wild areas established in part 265 of this chapter.

PUBLIC HEARINGS ON ROAD PROJECTS

AUTHORITY: 45 Stat. 750; 25 U.S.C. 318a. Interpret or apply sec. 6, 49 Stat. 1521, as amended; 25 U.S.C. 318b.

SOURCE: Sections 170.10 to 170.19, 39 FR 12751, Apr. 8, 1974, unless otherwise noted. Redesignated at 47 FR 13327, Mar. 30, 1982.

§ 170.10  Purposes and objectives.

The regulations in this subpart govern the calling and conducting of public hearings on Bureau of Indian Affairs road projects beginning with road projects scheduled to begin construction in Fiscal Year 1975, and thereafter. In order to promote coordination and comprehensive planning of construction activities on Indian reservations, the objectives for conducting public hearings on proposed road projects are to:

(a) Inform interested persons of the road proposals which affect them and allow such persons to express their views at those stages of a project's development when the flexibility to respond to these views still exists.

(b) Insure that road locations and designs are consistent with the reservations' objectives and with applicable Federal regulations.

§ 170.11  Criteria.

A public hearing shall be held for each project that:

(a) Is a new route being constructed,

524

(31)

(b) Would significantly change the layout or function of connecting or related roads or streets,

(c) Would have an adverse effect upon adjacent real property, or

(d) Is expected to be of a controversial nature.

§ 170.12  Need for public hearing determined.

The Superintendent will call a meeting of representatives from the tribe, the Bureau of Indian Affairs, and other appropriate agencies to determine for each road project if a public hearing is needed. The determination will be based on the criteria given in § 170.11. More than one public hearing may be held for a project if necessary.

§ 170.13  Notice of road construction projects.

When no public hearing is scheduled for a road construction project, notice of the road construction project must be given at least 90 days before the date construction is scheduled to begin. Such notice should give the project name and location, the type of improvement planned, the date construction is scheduled to start, and the name and address of the office where more information can be obtained. The notice should be posted or published as determined by the Superintendent.

§ 170.14  Notice of public hearing.

Notice will be given to inform the local public of the scheduled hearing. The notice should give the date, time, and place of the scheduled hearing; the project location; the proposed work to be done; the place where the preliminary plans may be reviewed; and the place where more information on the project can be obtained. The notice should be posted or published as determined by the Superintendent. Notice should be given at least 15 days before the scheduled date of the public hearing and again, at least 5 days before the hearing date.

§ 170.15  Record of hearing proceedings.

A record of the hearing shall be made. The record shall include written statements submitted at the hearing or within 5 days following the hearing.

§ 170.16  Conducting the public hearing.

(a) The Superintendent will appoint a tribal or Bureau of Indian Affairs official to preside at the public hearing and to maintain a medium for free and open discussion designed to reach early and amicable resolution of issues.

(b) The Superintendent shall be responsible for maintaining a record of the hearing and shall make arrangements for appropriate officials to be present at the hearing to be responsive to questions which may arise.

(c) The purpose of the hearing and an agenda of items to be discussed should be presented at the beginning of the hearing. It should be made clear at the hearing that the tribal chairman or his designated roads committee are the officials responsible for setting reservation road priorities and considering the merits of one road project over another. Sufficient maps and project plans will be available at the hearing for public review. The hearing audience should be informed of the Bureau's road construction and right-of-way acquisition procedures on reservations. If the project will require relocating residences or businesses, information on relocation services and authorized payments will be given.

§ 170.17  Written statements.

Written statements may be submitted as well as oral statements made at the public hearing. Written statements may also be submitted during the 5 days following the hearing.

§ 170.18  Hearing statement.

If significant issues develop at the public hearing which remain unresolved, the Superintendent will issue a hearing statement summarizing the results of the public hearing and his determination as to the further action to be taken in connection with the proposed project. The hearing statement shall be issued within 20 days of the date of the public hearing. The hearing statement will be posted at the place where the hearing was held, and shall be sent to interested persons upon request. The hearing statement will outline procedures whereby the determination may be appealed.

32

§ 170.19  Appeals.

Any determination concerning the proposed road project may be appealed in accordance with the procedures set forth in part 2 of this title.

# PART 171—OPERATION AND MAINTENANCE

Sec.
171.1   Administration.
171.2   Irrigation season.
171.3   Domestic and stock water.
171.4   Farm units.
171.5   Delivery points.
171.6   Distribution and apportionment of water.
171.7   Application for and record of deliveries of irrigation water.
171.8   Surface drainage.
171.9   Structures.
171.10  Fencing.
171.11  Obstructions.
171.12  Rights-of-way.
171.13  Crops and statistical reports.
171.14  Carriage agreements and water right applications.
171.15  Leaching water.
171.16  Excess water.
171.17  Delivery of water.
171.18  Service and farm ditches.
171.19  Operation and maintenance assessments.
171.20  Water users' ledgers.
171.21  Health and sanitation.
171.22  Complaints.
171.23  Disputes.

AUTHORITY: Secs. 1, 3, 36 Stat. 270, 272, as amended; 25 U.S.C. 385. Sec. 171.4(b) also issued under 34 Stat. 1024, 38 Stat. 583, and 68 Stat. 1026. Secs. 171.4(a), 171.4(c), 171.16(b), and 171.17(f) also issued under sec. 11, 39 Stat. 142.

SOURCE: 42 FR 30562, June 14, 1977, unless otherwise noted. Redesignated at 47 FR 13327, Mar. 30, 1982.

§ 171.1  Administration.

(a) The Agency Superintendent, Project Engineer or such official as authorized by the Area Director is the Officer-in-Charge of those Indian Irrigation Projects or units operated or subject to administration by the Bureau of Indian Affairs, whether or not each project or unit is specifically mentioned in this part. The Officer-in-Charge is fully authorized to administer, carry out, and enforce these regulations either directly or through employees designated by him. Such enforcement includes the refusal to deliver water.

(b) The Officer-in-Charge is authorized to apply to irrigation subsistence units or garden tracts only those regulations in this part which in his judgment would be applicable in view of the size of the units and the circumstances under which they are operated.

(c) The Officer-in-Charge is responsible for performing such work and taking any action which in his judgment is necessary for the proper operation, maintenance and administration of the irrigation project or unit. In making such judgments, the Officer-in-Charge consults with water users and their representatives, and with tribal council representatives, and seeks advice on matters of program priorities and operational policies. The Officer-in-Charge will be guided by the basic requirement that the operation will be so administered as to provide the maximum possible benefits from the project's or unit's constructed facilities. The operations will insure safe, economical, beneficial, and equitable use of the water supply and optimum water conservation.

(d) The Secretary of the Interior reserves the right to exercise at any time all rights, powers, and privileges given him by law, and contracts with irrigation districts within Indian Irrigation Projects. Close cooperation between the Indian tribal councils, the project water users and the Officer-in-Charge is necessary and will be to the advantage of the entire project.

(e) The Area Director, or his delegated representative, is authorized to fix as well as to announce by notice published in the FEDERAL REGISTER, the annual operation and maintenance assessment rates for the irrigation projects or units within his area of responsibility. In addition to the rates, the notices will include such information as is pertinent to the assessment, payment, and collections of the charges including penalties and duty of water.

(f) The rates will be based on a carefully prepared estimate of the cost of the normal operation and maintenance of the project. Normal operation and maintenance is defined for this purpose

33